# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMA ROSA GODINEZ, <br><br> Plaintiff, <br><br> v. <br><br> JORGE MALENO HUERTA, <br><br> Defendant. | Case No. 16-cv-0236-BAS-NLS <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION *IN LIMINE* TO EXCLUDE OR LIMIT TESTIMONY OF PLAINTIFF'S EXPERT ROGER CLARK** <br><br> **[ECF No. 47]** |

Pending before the Court is a motion *in limine* filed by Defendant Jorge Maleno Huerta ("Deputy Huerta") to exclude or limit the testimony of Plaintiff's expert Roger Clark. (ECF No. 47.) Plaintiff Alma Godinez ("Godinez") has responded in opposition to that motion. (ECF No. 68.) For the reasons herein, the Court grants in part and denies in part Defendant's motion to exclude or limit the testimony of Roger Clark.

## I. BACKGROUND

This case arises from events which occurred on February 2, 2015, during which Deputy Huerta responded to a call at Godinez's home. Kevin Thornton told Deputy Huerta that he had an argument with his girlfriend, Godinez, and that he needed to retrieve his belongings from the residence, including the keys to his truck. After knocking on the front door and receiving no response, Deputy Huerta and Thornton went to the back of the residence and Thornton forced his way through the door of

the residence. Godinez was behind the door and fell to the ground. The parties dispute the events that occurred thereafter. Deputy Huerta claims that Godinez got off the floor and raised the bat, in a fighting stance. He claims that he drew his Taser and demanded she drop the bat, she started a swinging motion and, in response, he fired the Taser, causing her to drop the bat. When she refused to drop to the ground, Deputy Huerta used the Taser again in "drive-stun mode." Godinez, however, states that she remained on the floor and did not stand up or grab the bat. She states that she was "crab-walking" backwards when Deputy Huerta fired the Taser. Godinez was subsequently arrested and charged with (1) resisting or obstruction a police officer under California Penal Code §148(a)(1), and (2) assault on a peace officer with a deadly weapon, other than a firearm, by means likely to produce great bodily injury, pursuant to California Penal Code §245(c).

Godinez brought claims against Deputy Huerta and another officer, Deputy Angela Lopez, under: (1) 42 U.S.C. §1983 based on unlawful entry; (2) 42 U.S.C. §1983 based on an illegal search; (3) 42 U.S.C. §1983 based on excessive force; (4) 42 U.S.C. §1983 based on wrongful arrest; (5) 42 U.S.C. §1983 based on wrongful detention; (6) Cal. Civ. Code §52.1 based on unlawful entry, illegal search, excessive force, wrongful arrest and detention; and (7) 42 U.S.C. §1983 based on malicious prosecution. (ECF No. 1.) In its November 16, 2017 Summary Judgment Order, the Court dismissed all claims against Deputy Lopez and determined that Deputy Huerta was entitled to qualified immunity with respect to Godinez's claim for unlawful entry. (ECF No. 39.) All other claims against Deputy Huerta remain for trial.

On January 29, 2018, both parties filed various motions *in limine*. (ECF Nos. 46–50.) Among those motions was the instant motion to exclude or limit the testimony of Plaintiff's expert Roger Clark, who submitted a written expert report. (ECF No. 47-1 Ex. A ("Clark Report").) Plaintiff moved to strike the motion as untimely (ECF No. 51), which the Court denied and ordered Plaintiff to respond (ECF No. 64). The Court ruled on all other motions *in limine* during a bench hearing on

February 20, 2018. (ECF No. 65.) Jury trial in this case is currently scheduled for June 12, 2018. (ECF No. 67.) The Court now rules on the merits of Defendant's motion *in limine* regarding Mr. Clark's expert opinion and testimony.

## II. LEGAL STANDARDS

A party may use a motion *in limine* to exclude inadmissible or prejudicial evidence before it is introduced at trial. *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). The motion is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings. *See Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). By resolving the motion, potentially prejudicial evidence may be prevented from being presented to the jury, therefore avoiding the need for the trial judge to attempt to neutralize the taint of prejudicial evidence. *See Brodit v. Cambra*, 350 F.3d 985, 1004–05 (9th Cir. 2003). A motion *in limine* may be used to exclude or limit an expert's testimony. "[I]t is the proponent of the expert who has the burden of proving admissibility." *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). Admissibility of the expert's proposed testimony must be established by a preponderance of the evidence. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592 n.10 (1993) (citing FED. R. EVID. 104(a) *and Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987)).

Rule 702 supplies the general standard applicable to admission of expert testimony. Under the Rule, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise . . ." FED. R. EVID. 702. The Rule, however, imposes four constraints. First, "the expert's scientific, technical, or other specialized knowledge" must "help the trier of fact to understand the evidence or to determine a fact in issue." *Id*. Second and third, the testimony must be "based on sufficient facts or data" and be "the product of reliable principles and methods." *Id*. Fourth, the expert must have "reliably applied the principles and methods to the facts of the case." *Id*. Through each of its requirements for the admissibility of expert testimony, Rule 702 "assign[s]

to the trial judge the task of ensuring that an expert's testimony both rests on a reliance foundation, and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. The trial judge acts as a gatekeeper in discharging this task. The Court's "gate-keeping" role extends to the reliability of non-scientific expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). "[A] district court's inquiry into admissibility is a flexible one." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014) (citing *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013)). "[E]xpert testimony is liberally admitted under the Federal Rules." *Daubert*, 509 U.S. at 588 (noting that Rule 702 is part of the "liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony"); *see also* FED. R. EVID. 702, Advisory Comm. Notes on Rules – 2000 Amendment ("[R]ejection of expert testimony is the exception rather than the rule.").

## III. DISCUSSION

Defendant seeks to exclude or limit Mr. Clark's expert testimony on various grounds. First, Defendant challenges the reliability of Mr. Clark's opinions generally and takes issue on whether certain opinions are based on sufficient facts or data. Second, Defendants raises relevancy challenges, including that Mr. Clark offers legal conclusions, offers impermissible opinions on witness credibility and the Defendant's subjective knowledge during the events, and proffers opinions on matters no longer relevant to the issues for trial. Lastly, Defendant seeks to preclude Mr. Clark from proffering at trial new opinions not contained in his written expert report, based on Federal Rules of Civil Procedure 26 and 37. The Court addresses each ground.

### A. Reliability of Mr. Clark's Expert Opinion

Defendant asserts a general objection to Mr. Clark's expert testimony on the ground that he does not rely on "professional studies" that support his opinions in any objectively verifiable manner, but rather relies on "generalized professional

principles." (ECF No. 47 at 6–7.) Plaintiff responds that Mr. Clark's expert testimony is not testimony which must conform to *Daubert* requirements for scientific expertise. (ECF No. 68 at 2–3.) The Court agrees with Plaintiff's assessment of Mr. Clark's expert testimony as a general matter, subject to the Court's determinations regarding Defendant's specific challenges.

### 1. Police Practices and Training Standards

Rule 702 recognizes that "[t]he measure of intellectual rigor [required] will vary by the field of expertise and the way of demonstrating expertise will also vary." *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996). In the context of "the reliability of non-scientific testimony," such as expert testimony on police practices and use of force, "the *Daubert* factors (peer review, publications, potential error rate, etc.) simply are not applicable" because "reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (citations omitted); *Lopez v. Chula Vista Police Dep't*, No. 07-cv-1272-WQH-BLM, 2010 WL 685014, at *1 (S.D. Cal. Feb. 18, 2010).

Expert testimony on police practices and the use of force has generally been found to be admissible in cases concerning police misconduct, including when the expert's opinion is based on his experience as a police officer or experience with police training standards and policies. *See, e.g., Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (en banc) (expert submitted report regarding training of police dogs and police dog handlers, relying on California's Peace Officer Standards and Training); *Davis v. Mason Cty.*, 927 F.2d 1473, 1484-85 (9th Cir. 1991) (testimony of plaintiffs' police practices expert that officer violated law enforcement standards properly received); *Larez v. City of Los Angeles*, 946 F.2d 630, 635, 647 (9th Cir. 1991); *Baldauf v. Davidonson*, No. 1:04-cv-1571-JDT-TAB, 2007 WL 2156065, at *5 (S.D. Ind. July 24, 2007) (stating that "[k]nowledge about police training is a specialized body of knowledge" and "[a] police officer's testimony about

that training can be helpful even when the testimony covers matters that are within the average juror's comprehension" (citing *Lawson v. Trowbridge*, 153 F.3d 368, 376 (7th Cir. 1998) (internal quotations omitted)).

Here, the "general professional principles" Defendant contends make Mr. Clark's testimony generally unreliable are in fact his experience regarding police training standards and policies. Mr. Clark is a twenty-seven-year veteran of the Los Angeles County Sheriff's Department, who retired in 1993 holding a California Peace Officer Standards and Training ("POST") Advanced Certificate and having graduated the POST Command College. (Clark Report at 19.) This experience has led other courts to find that Mr. Clark is qualified as an expert in police training standards and policies. *See, e.g.*, *Day v. Cty. of Contra Costa*, No. C 07-4335 PJH, 2008 WL 4858472, at *20 (N.D. Cal. Nov. 10, 2008) ("Mr. Clark's CV and Rule 26 report establish that he is generally qualified to testify as to police procedures. The court does not find the lack of published books or other materials to be significant."); *Baldauf*, 2007 WL 2156065, at *6. The Court similarly finds that Mr. Clark's experience as a police officer and with police practices and training qualifies him as an expert in such matters.

### 2. Opinion Regarding Tasers

Defendant raises specific challenges to the reliability of Mr. Clark's testimony regarding the use of Tasers on the ground he "has no specialized knowledge of Tasers and never had personal experience using tasers in his career as a law enforcement officer." (ECF No. 47 at 7.) Defendant also claims that Mr. Clark's opinion that Deputy Huerta's use of a Taser violated San Diego County Sheriff's Department policies lacks foundation. (*Id.* at 8.) The Court agrees in part with Defendant's challenge.

Mr. Clark's written report provides general information regarding Tasers, including its development, subsequent models, and its uses. (Clark Report at 17–18.) Mr. Clark states that "[s]ince my retirement, I have become an expert in the features

and the use of TASER International's products, including the Model M26, Model X26 and Model X2 ECDS." (*Id*. at 25.) Mr. Clark "own[s] each, along with the download software," and he has "reviewed all the TASER training materials and [is] familiar with the risks and tactics associated with these potentially lethal devices." (*Id*.) As other courts have determined specifically with respect to Mr. Clark, these facts "do[] not render him 'an expert in the features and use of TASER International's products'. . ." *Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1197 (C.D. Cal. 2015) (quoting *Barber v. City of Santa Rosa*, No. C-08-5649 MMC, 2010 WL 5069868, at *8 (N.D. Cal. Dec. 7, 2010)). To the extent Mr. Clark seeks to offer testimony as a purported expert on Tasers, he is precluded from doing so.

However, to the extent Mr. Clark's testimony regarding Tasers is premised on his experience concerning police training standards and policies, he may opine on those issues, subject to the limitations set forth in this Order. *See, e.g., Valtierra*, 99 F. Supp. 3d at 1197 ("Clark may opine on whether tasers may cause bodily injury and when taser deployment is an appropriate use of force—but only to the extent that such testimony is based on Clark's expertise in POST and other law enforcement standards."). This includes testimony regarding the San Diego Sheriff's Department's policies regarding Taser use.[1]

### 3. Concession to Exclude Certain Opinions

Defendant also raises specific challenges to the reliability of Mr. Clark's opinions regarding that (1) the alleged failure of the San Diego County Sheriff's Department to investigate Deputy Huerta's use of force constituted a failure of policy and (2) the Department allegedly endorsed Deputy Huerta's conduct. (ECF No. 47 at 8–9 (citing Clark Report, Opinions 13–14).) Defendant contends that the first

---

[1] Contrary to Defendant's argument (ECF No. 47 at 8), Mr. Clark's expert report indicates that he reviewed the San Diego County Sheriff's Department policies and procedures manual. (Clark Report at 2.) The report cites specific policies and procedures on which he bases certain conclusions. (*Id*.) Mr. Clark thus has a proper foundation on which to premise his opinions.

opinion is unsupported because Mr. Clark's report does not cite any San Diego Sheriff's Office policies and the second opinion is conclusory. (*Id.*) In response to Defendant's motion, Plaintiff states that "because [she] is not pursuing a *Monell* claim, she will not adduce testimony from Mr. Clark" on these issues and "thus this aspect of Defendant's motion is moot." (ECF No. 68 at 8 n.4.) Given this concession, the Court grants Defendant's motion to exclude testimony on these issues. Mr. Clark shall not offer testimony regarding the Department's alleged failure to investigate and alleged endorsement of the incident.

### B. Relevance

"Encompassed in the determination of whether expert testimony is relevant is whether it is helpful to the jury, which is the 'central concern' of Rule 702." *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n.7 (9th Cir. 2002); s*ee also United States v. Gwaltney*, 790 F.2d 1378, 1381 (9th Cir. 1986) ("The general test regarding the admissibility of expert testimony is whether the jury can receive 'appreciable help' from such testimony."). Defendant challenges various aspects of Mr. Clark's opinions, which pertain to its relevance in the context of expert opinions generally, *i.e.* whether the testimony comports with the proper role of such testimony as *an aid* to the jury, rather than subsuming the jury's role. Defendant also raises a relevancy challenge specific to the issues remaining for trial. The Court addresses these concerns.

#### 1. Opinions Regarding Conclusions of Law

Defendant seeks generally to exclude Mr. Clark's opinions to the extent they are legal conclusions. (ECF No. 47 at 10.) The Court agrees that several of Mr. Clark's opinions in his written report constitute legal conclusions and must be excluded.

As a general rule, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." FED. R. EVID. 704. Nevertheless, "an expert witness cannot give

an opinion as to [his] *legal conclusion*, which is effectively an opinion on an ultimate issue of law." *Hangarter*, 373 F.3d at 1016 (emphasis in original). Such conclusions are generally not helpful to the trier of fact. *Valtierra*, 99 F. Supp. 3d at 1198. Moreover, an expert's "opinion as to what 'current law' 'mandates' or whether defendants were 'legally' 'justified' in using the force applied against [the plaintiff] usurps the jury's role." *Taylor v. Lemus*, No. CV 11-9614 FMO (SSx), 2015 WL 12698306, at *6 (C.D. Cal. June 17, 2015) (citing *Sloman v. Tadlock*, 21 F.3d 1462, 1468 (9th Cir. 1994)). Here, Mr. Clark opines that "[Defendant's] use of the Taser violated Ms. Godinez's clearly established legal right to remain in her residence without fear of law enforcement, intrusion, assault and battery." (Clark Report Opinion 10.) This is not a permissible expert opinion because it is a legal conclusion and Mr. Clark may not offer it at trial. *See Day*, 2008 WL 4858472, at *23; *see also Shannon v. Koehler*, No. C 08-4059-MWB, 2011 WL 10483363, at *29 (N.D. Iowa Sept. 16, 2011) ("A court should exclude an expert's testimony if it instructs the jury on the law, as the court alone defines the law for the jury.").

Several of Mr. Clark's opinions also employ judicially defined or legally specialized terms in expressing opinions related to the issue of excessive force. For example, Mr. Clark refers to the use of a Taser as "extreme force," states that "there was no cause for Deputy Huerta to draw his taser weapon," and opines that the use of force by Deputy Huerta was a "gross violation" of "law." (Clark Report Opinions 8, 9, 11.) Courts bar experts from using judicially defined or legally specialized terms. *See, e.g., Rascon v. Brookins*, No. CV-14-00749-PHX-JJT, 2018 WL 739696, at *4 (D. Ariz. Feb. 7, 2018) (cautioning that "[Mr. Clark] should not volunteer an opinion that the officers acted unconstitutionally or exercised excessive force. Legal opinions or conclusions are excluded from Clark's testimony"); *Cooke v. City of Stockton*, No. 2:14-CV-00908-KJM-KJN, 2017 WL 6447999, at *5 (E.D. Cal. Dec. 18, 2017); *Monroe v. Griffin*, No. 14-CV-00795-WHO, 2015 WL 5258115, at *6–7 (N.D. Cal. Sept. 9, 2015) (excluding expert from using terms such as "grossly

unlawful, unnecessary, and excessive violence"); *Valtierra*, 99 F. Supp. 3d at 1198 (excluding Mr. Clark's expert testimony that "the use of force was 'excessive' or 'unreasonable,' under the circumstances," but allowing expert's opinions to "be explored through hypothetical questioning so as to avoid invading the province of the jury"); *Tubar v. Clift*, No. C05-1154-JCC, 2009 WL 1325952, at *3 (W.D. Wash. May 12, 2009) (precluding expert opinion testimony from police practices expert from expressing opinions in terms of whether officer had "probable cause," whether officer acted "unconstitutionally", and whether deadly force was "objectively reasonable"). Mr. Clark is not permitted to express any of his opinions at trial using judicially defined or legally specialized terms.

However, as Plaintiff observes in response to Defendant's motion *in limine* (ECF No. 68 at 9), Mr. Clark can permissibly testify about whether Deputy Huerta's conduct comported with *applicable procedures and policies* on the day of the incident, which does not constitute a legal opinion or conclusion.[2] *See Smith*, 394 F.3d at 703 (citing expert testimony on "whether the officers' conduct comported with law enforcement standards, . . . rel[ying] upon California's Peace Officer Standards and Training"); *Cooke*, 2017 WL 6447999, at *5 ("Clark may within the scope of his expertise opine as to whether defendants complied with applicable

---

[2] Plaintiff contends that what police policies and training require is "consistent with the law relating to use of force." (ECF No. 68 at 8.) This contention is unavailing. Legal conclusions couched in the guise of "training" remain impermissible legal conclusions that Mr. Clark may not offer. *See Molina v. City of Visalia*, No. 1:13-cv-01991-DAD-SAB, 2016 WL 8730723, at *6 n.1 (E.D. Cal. Sep. 16, 2016) (precluding Mr. Clark from testifying that "use of lethal force was unlawful under the circumstances (as taught by POST)"); *Carr v. Montgomery Cty.*, No. H-13-2795, 2015 WL 5838862, at *8 (S.D. Tex. Oct. 7, 2015) (precluding Mr. Clark from testifying that "[o]fficers are trained and are expected to know that there was no law enforcement reason to have either the cameraman with camera or the newspaper reporter in Ms. Perla Carr's residence and such actions were unreasonable.").

procedures on the night of the incident"); *Molina v. City of Visalia*, No. 1:13-cv-01991-DAD-SAB, 2016 WL 8730723, at *6 (E.D. Cal. Sep. 16, 2016) ("[P]laintiffs' expert will be allowed to express an opinion on whether the officers' conduct, after they got out of their vehicle, was consistent with POST and constituted part of the totality of circumstances that led to their use of deadly force."). Consistent with the limitation on not offering legal conclusions, Mr. Clark "may testify as to the forceful alternatives [the defendant] had available and what reasonably well-trained officers are taught regarding when they may use force." *See, e.g., Colbert v. Cty. of Kern*, No. 1:13-cv-01589-JLT, 2015 WL 8214204, at *2 (E.D. Cal. Dec. 8, 2015) (but precluding Mr. Clark from "testify[ing] that using the taser in the circumstances confronting [the defendant] was excessive or unreasonable or the like."). Mr. Clark, however, is limited to responding to hypothetical situations posed to him.[3]

### 2. Witness Credibility

Credibility is a matter that a jury must decide, not an expert witness. *United States v. Goode*, 814 F.2d 1353, 1355 (9th Cir. 1987). An expert witness is not permitted to testify about a witness' credibility or to testify in such a manner as to improperly buttress a witness' credibility. *See United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989). Defendant asserts that Mr. Clark impermissibly makes determinations about witness credibility in his written expert report. (ECF No. 47 at 12–14.) The Court agrees.

---

[3] The parties dispute the relevance of hypotheticals regarding tactics Deputy Huerta could have used. (*Contrast* ECF No. 47 at 9–10 *with* ECF No. 68 at 9.) The law is clear that "[w]hile police officers need not employ the least intrusive degree of force possible during an arrest, they must at least consider less intrusive methods, and the presence of feasible alternatives is a relevant consideration in an excessive force analysis." *Bryan v. MacPherson*, 630 F.3d 805, 831 n.15 (9th Cir. 2010); *see also Kanda v. Longo*, 484 Fed. App'x 103, 104 (9th Cir. 2012). Expert testimony, particularly from an expert in police practices and training, may assist the trier of fact in considering whether there were "feasible alternatives" to the force Deputy Huerta used.

In his written report, Mr. Clark opines that "[t]aking Ms. Godinez's set of facts as true, then Deputy Huerta filed a false report in violation of policy, training and law as stated below (and as taught by POST)." (Clark Report, Opinion 12.) Mr. Clark's report contains other material similarly suggesting that Defendant filed a false police report and, thus, impermissibly makes credibility determinations. (Clark Report at 16 (stating that differences in the "facts proffered" "cannot be reconciled by mistakes in perception or intent," "there can be only one set of true facts" and that "[o]fficers are trained that filing a false police report is ethically wrong and can rise to the level of criminal conduct").) These opinions make impermissible credibility determinations by weighing evidence and drawing inferences, tasks suited to a jury and for which Mr. Clark's expertise is not necessary. Other courts have excluded substantially similar opinions offered by Mr. Clark in other cases involving police misconduct. *See, e.g., Cooke*, 2017 WL 6447999, at *6 (opining that "[t]aking the autopsy as true," officer struck plaintiff's husband in the back of the head and the officer" submitted a false police report in violation of SPD policy, POST training and the Law. . ."). This Court similarly precludes Mr. Clark from offering such opinions at trial.

### 3. Opinions Regarding Subjective Knowledge

It is inappropriate for an expert to attempt to intuit a party's subjective knowledge or "create a question of fact as to what [the party] actually knew." *Cotton v. City of Eureka*, No. C 08-04386 SBA, 2011 WL 4047490, at *2 (N.D. Cal. Sep. 8, 2011) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 348 n.29 (5th Cir. 2006)). Defendant seeks to exclude Mr. Clark's opinions to the extent they concern Defendant's subjective knowledge or state of mind. (ECF No. 47 at 11.) Mr. Clark opines that Deputy Huerta's "actions appear to be deliberately reckless and not accidental" and that "[t]here was no basis to believe that Ms. Godinez would attack . . ." (Clark Report Opinions 3, 10.) Courts have precluded Mr. Clark from offering such opinions as impermissible "legal conclusions" and "speculative factual

conclusions," which are the province of the jury. *See, e.g., Valiavicharska v.* Celaya, No. CV 10-4847 JSC, 2012 U.S. Dist. LEXIS 8191, at *14 (N.D. Cal. Jan. 24, 2012) (precluding Mr. Clark from "speculat[ing] about what anyone thought or the reasons behind their actions . . ."); *Cotton*, 2011 WL 4047490, at *2 (precluding Mr. Clark from offering testimony that defendants' conduct was "intentional, reckless, and dangerous", that their actions "reflected a callous disregard", and that they "have no legitimate claim that they did not, or could not know" of plaintiff's alleged injuries). This Court similarly views Mr. Clark's opinions on these matters as impermissible. Mr. Clark is precluded from offering testimony regarding Deputy Huerta's subjective knowledge or state of mind.

### 4. Opinions on Matters Already Adjudicated

Defendant seeks to exclude Mr. Clark's opinions and testimony to the extent they concern matters already adjudicated by the Court in its Summary Judgment Order, including matters regarding the legality of Deputy Huerta's entry into Plaintiff's residence and Mr. Thornton's residency and tenancy. (ECF No. 47 at 4–5.) Defendant asserts that any opinions on these matters would be irrelevant, prejudicial, and confusing because the Court already ruled that he cannot be liable for unlawful entry.

Under Rule 402, "irrelevant evidence is not admissible." FED. R. EVID. 402. Rule 403 also permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice" or "confusing the issues." FED. R. EVID. 403. The Court previously dismissed Godinez's claim against Deputy Huerta for unlawful entry on the ground that, based on the facts, Huerta was entitled to qualified immunity on that claim. (ECF No. 39 at 14.) Because Godinez's corresponding claim was disposed of on summary judgment, testimony concerning unlawful entry is no longer relevant to this case and is, therefore, inadmissible. *See, e.g., Lopez*, 2010 WL 685014, at *5 (granting motion *in limine* to exclude Mr. Clark's testimony "with respect to testimony about claims which were dismissed in the

Court's summary judgment order"); *Baldauf*, 2007 WL 2156065, at *6 (finding that Mr. Clark's testimony would not assist the jury "to the extent that the Summary Judgment Entry disposed of many of the issues relevant to Clark's proposed testimony"); *see also Daubert*, 509 U.S. at 591 ("[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful"). Such testimony includes Opinions 1 through 4 in their entirety and portions of Opinions 5 and 8.[4]

Accordingly, the Court grants Defendant's request to preclude Mr. Clark from providing expert opinions or testimony on Mr. Thornton's tenancy and residency as well as the legality of Defendant Huerta's entry into Plaintiff's residence. Mr. Clark must not offer opinions or testimony on any of these issues at trial.

### C. Preclusion of Offering New Opinions at Trial

Lastly, Defendant seeks to preclude Mr. Clark from offering any "new" opinions at trial beyond the fourteen numbered opinions set forth in his expert report. (ECF No. 47 at 3.) Plaintiff disclosed Mr. Clark as a retained expert witness and provided a written report to Defendant of Mr. Clark's expert opinion. (ECF No. 47-1.) Mr. Clark qualified the fourteen enumerated opinions in his written report as "[o]pinions thus far." (*Id.* at 10.) Defendant seizes on this language of the report to suggest that Mr. Clark may offer expert opinions not set forth in the report. The pretrial disclosures were due on November 13, 2017. (ECF No. 20.) There is no indication that Plaintiff ever supplemented her written expert report with additional

---

[4] Mr. Clark may not testify as the following portion of Opinion 5: "[t]he facts of this incident document that Deputy Huerta . . . entered Ms. Godinez's residence without lawful authority. Accordingly, his use of force, and arrest of Ms. Godinez occurred absent lawful authority." (Clark Report Opinion 5.) Mr. Clark also may not testify as to the following portion of Opinion 8: "Assuming all of the facts as proffered by Ms. Godinez to be true, then Deput[y] Huerta . . . violated policy and Ms. Godinez's civil rights when they entered Ms. Godinez's residence without a warrant or exigency." (*Id.* Opinion 8.) Both of these excerpts are precluded by the Court's Summary Judgment Order and, moreover, constitute impermissible legal conclusions.

opinions. Defendant therefore points to both Rules 26 and 37 as necessitating a prophylactic blanket exclusion of unidentified new opinions Mr. Clark might offer. The Court denies Defendants' request.

Under Rule 26(a)(2), an expert witness disclosed by a party is required to submit a written report if that witness is retained or specifically employed to provide expert testimony in the case. FED. R. CIV. P. 26(a)(2)(B). The report is required to contain "a complete statement of all opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B)(i). A party relying on an expert witness is required to supplement its expert report "when required under Rule 26(e)." FED. R. CIV. P. 26(a)(2)(E). That rule in turn requires that a party supplement a written expert report, including "[a]ny additions or changes" "by the time the party's pretrial disclosures under Rule 26(a)(3) are due." FED. R. CIV. P. 26(e). Rule 37 gives teeth to these disclosure requirements, by precluding a party from using at trial information it failed to disclose under Rule 26(a) or (e), unless the failure was substantially justified or is harmless. FED. R. CIV. P. 37(c).

Whether Rule 37 requires exclusion, however, depends on the circumstances. Under the Federal Rules, "[t]he purpose of these [expert] reports is not to replicate every word that the expert might say on the stand. It is instead to convey the substance of the expert's opinion . . . so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary." *Metavante Corp. v. Emigrant Savings Bank*, 619 F.3d 748, 762 (7th Cir. Aug. 30, 2010) (quoting *Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009)). The Federal Rules "'do[] not limit an expert's testimony simply to reading his report . . . . The rule[s] contemplate that the expert will supplement, elaborate upon, [and] explain his report' in his oral testimony." *Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167, 168 (D.C. Cir. 2007) (quoting *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006)). Thus, so long as an expert's opinion or analysis "do[es] not differ substantially from opinions offered in the expert report, they are not late for purposes for 26(a) and so

are not subject to Rule 37 preclusion." *Bone Care Int'l, LLC v. Pentech Pharms., Inc.*, No. 08-cv-1083, 2010 WL 3894444, at *13 (N.D. Ill. Sept. 30, 2010) (citing *Rowe Int'l Corp. v. Ecast, Inc.*, 586 F. Supp. 2d 924, 935 (N.D. Ill. 2008)).

Here, Defendant does not point to any specific opinion that Mr. Clark is likely to offer at trial not already contained in his written expert report, or provide information that would suggest Mr. Clark will do so. The Court therefore cannot assess whether it differs "substantially" in substance from Mr. Clark's written report. While the Court is mindful of Defendant's concern, it is not enough to warrant blanket preclusion. *See, e.g., Morgutia-Johnson v. Hustedde*, No. 1:14-CV-00127-LJO-SKO, 2015 WL 3507130, at *6 (E.D. Cal. June 3, 2015) (denying motion to exclude all evidence, prior testimony and information not properly disclosed "for lack of specificity"). Furthermore, Rule 37 may permit the admission of an opinion not previously disclosed if the nondisclosure is harmless of substantially justified.[5] Although Plaintiff ultimately may not be able to show either[6], the Court cannot make such a determination at this time. Accordingly, the Court denies Defendant's request without prejudice to Defendant's ability to raise it at trial, as appropriate.

## IV. CONCLUSION & ORDER

---

[5] Factors courts consider in determining whether a failure to timely disclose was substantially "justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Durham v. Cty. of Maui*, No. 08-00342, JMS/RLP2011 WL 2532690, at *4 (D. Haw. June 23, 2011) (quoting *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010); *Transbay Auto Serv., Inc. v. Chevron U.S.A. Inc.*, No. C 09-04932 SI, 2010 WL 4591596, at *7 (N.D. Cal., Nov. 3, 2010).

[6] Plaintiff will have the burden to show substantial justification or harmlessness. *See Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011), *superseded by statute on other grounds as recognized in Dixon v. Legacy Transp. Sys., LLC*, No. 2:15-cv-01359-JAD-PAL, 2017 WL 4004412, at *7–8 (D. Nev. Sept. 11, 2017).

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion *in limine* to exclude or preclude the testimony of Roger Clark. (ECF No. 47.) Any opinions Mr. Clark offers at trial shall conform to this Order.

Defendant is also advised that his police practices expert, Jeffrey Martin, is equally subject to certain limitations identified in this Order, including: not providing opinions on subjective state of mind, making impermissible credibility determinations, offering legal conclusions, or opining on matters no longer relevant to the issues in this case.

**IT IS SO ORDERED.**

DATED: May 1, 2018

Hon. Cynthia Bashant
United States District Judge