# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMA ROSA GODINEZ,<br><br>                    Plaintiff,<br>v.<br>JORGE MALENO HUERTA,<br>                    Defendant. | Case No. 16–cv–0236–BAS–NLS<br>**ORDER:**<br>**(1) GRANTING PLAINTIFF'S REQUEST FOR JUDGMENT AS A MATTER OF LAW**<br>**AND**<br>**(2) DENYING PLAINTIFF'S REQUEST FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER**<br>**[ECF No. 82]** |

      This Section 1983 action stems from an altercation at Plaintiff Alma Godinez's home on February 2, 2015, during which Godinez alleges that she was Tasered by a deputy sheriff. (ECF No. 1.) Godinez brought suit against Deputies Maleno Huerta ("Maleno") and Lopez, alleging: (1) unlawful entry without a warrant, (2) illegal search, (3) excessive force, (4) wrongful arrest, (5) wrongful detention, (6) violations of California Civil Code § 52.1 and (7) malicious prosecution. (*Id.*) The Court granted summary judgment in favor of Defendants, dismissing all claims against

Deputy Lopez and finding that Deputy Maleno was entitled to qualified immunity on Count 1 for the initial entry into Godinez's home. (ECF No. 39.) The case proceeded to trial solely against Deputy Maleno. Trial spanned from June 12, 2018 through June 18, 2018, with the Court declaring a mistrial because the jury could not reach a verdict. (ECF Nos. 73–77.)

Following trial, Godinez filed a consolidated motion requesting two forms of relief: (1) a Rule 50 judgment as a matter of law on Count 2 of the Complaint for the post-arrest warrantless entry into her home and (2) reconsideration of the Court's ruling granting summary judgment to Deputy Maleno on Count 1 for the pre-arrest warrantless entry into her home. (ECF No. 82.) The parties have made various submissions in connection with Godinez's post-trial requests and the Court has held two hearings on the matter. (ECF Nos. 83–86, 92–93, 95, 98–101.) For the reasons herein, the Court grants Plaintiff's request for judgment as a matter of law and denies her request for reconsideration of the Court's summary judgment order.

## I. RELEVANT BACKGROUND

The following facts were established at trial:

1. Deputies Maleno and Lopez both came on duty February 2, 2015 around 6 a.m. (ECF No. 89, Trial Transcript, Vol. 1 ("TT1") at 113:23–24.)

2. Before beginning their shift, the Deputies received a briefing which included information that a call had been received relating to an argument occurring at 5669 Sweetwater Road. (*Id.* at 63:10–16, 113:25–114:3.)

3. At 11:41 a.m., both Deputies received a dispatch to go to 5669 Sweetwater Road. (*Id.* at 64:15–18, 65:3–5, 113:11–15.)

4. The Deputies could have looked up the specifics of the earlier report at 5669 Sweetwater Road on their police car computers. In fact, when dispatched to the address, they were given a cross-reference number, so they could look up the earlier call. Deputy Maleno testified that "typically, when possible" he would have read this earlier report before responding to the call, but he cannot remember whether he did

so on February 2, 2015. (*Id.* at 63:20–64:4, 65:6–13, 113:25–114:6, 114:23–115:2.)

5. In the earlier call, Kevin Thornton reported that his girlfriend, Alma Godinez, had taken his vehicle, that he was currently in a work furlough program (that is, living in jail or prison, but allowed to leave to go to work), that his truck was being stored at his girlfriend's house at 5669 Sweetwater Road, and that she was using his truck and credit card without his permission. (*Id.* at 67:2–16.) Notably absent and contradicted by this report is any representation that Thornton was living at the Sweetwater Road address. (*Id.* at 67:17–19.)

6. Deputy Maleno never checked Thornton's identification to see if he lived at the Sweetwater Road address. (*Id.* 166:24–167:1.) Deputy Maleno also never ran Thornton's name through dispatch to see if there was an address associated with his name. (ECF No. 90, Trial Transcript, Vol. 2 ("TT2") at 22:7–9.) Since Thornton was a registered sex offender who was required to report his address, if Deputy Maleno had done so, he would have seen that Thornton did not list Sweetwater Road as his place of residence.

7. Godinez testified that she was the only individual on the lease and the only individual who had ever lived in the home. (*Id.* at 148:9–14.) Thornton never lived with her, or spent the night at her home. (*Id.* at 152:15–18.)

8. When the Deputies arrived at the 5669 Sweetwater Road address, Thornton told the deputies he had gotten into an argument with his girlfriend, and he needed to retrieve his belongings from the residence. (TT1 at 69:3–6.) From earlier contacts, Deputy Maleno believed that the two were a couple, although Godinez testified they were not. (TT2 at 35:3–5, 153:3–4.)

9. The Deputies loudly knocked on the door and shouted, "Deputy Sheriffs," and "[a]nswer the door. We're here with Thornton. He just wants to pick up his things." (TT1 at 98:12–15.) No one responded.

10. After there was no answer to the knock, Thornton asked Deputy Maleno what he could do because he needed to get his belongings. (*Id.* at 126:5–8.)

11. Deputy Maleno told him he could force entry into his own home to get his belongings, but "we could not do that for him." (*Id.* at 126:5–12.) Specifically, Deputy Maleno testified that Thornton said "he had lived there previously or he was living there and he wanted his thing . . . can't stop someone from breaking into their own home, so—" (*Id.* at 127:1–5.) Deputy Maleno did not think there was any emergency requiring Thornton to enter the house and recalled that Thornton only wanted to get some clothing and other stuff. (*Id.* at 130:22–131:3). However, Deputy Maleno believed that he could not arrest someone for gaining access to his own home. (TT2 at 39:20–25, 40:1–2.)

12. Deputy Maleno and Thornton went to the side of the house where Deputy Maleno anticipated Thornton would try to get in through the rear door. (TT1 at 128:5–16.) At this time, Thornton told Deputy Maleno that Godinez might have a gun in the residence and that she kept a baseball bat near the door. (*Id.* at 130:14–21.)

13. Thornton opened a back door and entered an unlocked sunroom followed by Deputy Maleno. (*Id.* at 132:10–14.) Thornton then forced in the locked back door with his shoulder, knocking Godinez, who was right inside the door, to the floor. (*Id.* at 132:15–17, 132:19–21; TT2 at 11:8–10, 39:14–19, 178:10–15, 218:19–20, 218:22–25.) The parties dispute what happened immediately after Thornton forced in the locked door and Godinez fell to the floor.

14. Both parties agree that Deputy Maleno fired a Taser at Godinez in her residence. Eventually, Godinez was taken to the hospital and then booked into custody for assault on an officer.

15. After Godinez's arrest, Deputy Maleno went back to her home and reentered the home to collect evidence. He seized a baseball bat and possibly took photos of the broken door. (TT2 at 98:15–21.) Deputy Maleno testified that he did not conduct a search. He had no warrant to enter the home. (*Id.* at 24:10–13.)

## II. MOTION FOR JUDGMENT AS A MATTER OF LAW ON COUNT 2

At the close of the evidentiary portion of the trial and before submission of the case to the jury, Plaintiff moved for judgment as a matter of law on Count 2 of her Complaint, which alleges that Defendant Maleno entered her home without a warrant after her arrest to seize the baseball bat. (Compl. ¶¶ 41–44; ECF No. 91, Trial Transcript, Vol. 3 ("TT3") at 691:3–8.) The Court deemed Plaintiff's motion preserved and submitted the issue to the jury. (TT3 at 691:9–10.) Plaintiff now renews her request for judgment as a matter of law on Count 2. (ECF No. 82 at 2–4.)

### A. Standard of Review

The Court may grant a motion for judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). A party may make a renewed request for judgment as a matter of law after trial. Fed. R. Civ. P. 50(b). In ruling on a 50(b) motion, the Court may allow judgment on the verdict, order a new trial, or reverse the jury and direct the entry of judgment as a matter of law. *Id*.

"A jury's inability to reach a verdict does not necessarily preclude a judgment as a matter of law." *Headwaters Forest Defense v. Cty. of Humboldt*, 240 F.3d 1185, 1197 (9th Cir. 2000), *vacated on other grounds*, 534 U.S. 801 (2001). The Court may direct judgment as a matter of law if "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *E.E.O.C. v. Go Daddy Software, Inc*., 581 F.3d 951, 961 (9th Cir. 2009) (quoting *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006)). The court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000). Instead, the court reviews the evidence "in the light most favorable to the nonmoving party" and draws "all reasonable inferences in that party's favor." *Josephs*, 443 F.3d at 1062. The jury's verdict is reviewed for

"substantial evidence." *Janes v. Wal-Mart Stores, Inc.*, 279 F.3d 883, 888 (9th Cir. 2002). Substantial evidence means "such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (citing *George v. City of Long Beach*, 973 F.2d 706, 709 (9th Cir. 1992)).

## B. Plaintiff Is Entitled to Judgment as a Matter of Law on Count 2

"'A warrantless search of a house is *per se* unreasonable and, absent exigency or consent, warrantless entry into the home is impermissible under the Fourth Amendment.'" *United States v. Reid*, 226 F.3d 1020, 1025 (9th Cir. 2000) (quoting *United States v. Shaibu*, 920 F.2d 1423, 1425 (9th Cir. 1990)). "'[T]he presence of exigent circumstances necessarily implies that there is insufficient time to obtain a warrant.'" *Id.* at 1028 (quoting *United States v. Tarazon*, 989 F.2d 1045, 1049 (9th Cir. 1993)). In a civil rights action, "the essential element" that a Plaintiff must prove "is whether the search and seizure were reasonable under the circumstances." *Ruggiero v. Krzeminski*, 928 F.2d 558, 563 (2d Cir. 1991). "It is true that searches and seizures conducted without warrants are presumptively unreasonable." *Id.* This "presumption may cast upon the defendant the duty of producing evidence of consent or search incident to an arrest or other exceptions to the warrant requirement. However, the ultimate risk of nonpersuasion must remain squarely on the plaintiff in accordance with established principles governing civil trials." *Id.*

The trial evidence undisputedly shows that Defendant Maleno entered Plaintiff's home without a warrant to retrieve the baseball bat. Pursuant to controlling law, his warrantless entry was presumptively unreasonable. Defendant Maleno must therefore produce evidence showing that his warrantless post-arrest search was justified. Defendant advances three justifications based on the evidence adduced at trial: (1) he did not conduct an unreasonable search, (2) he seized the bat during a "continuing investigation" and, if a warrant was required, (3) "exigent

circumstances" justified an exception. (ECF No. 92 at 3–6.) The trial evidence does not support any of these justification under controlling law.

As to the first reason, Defendant argues that his entry was limited. Defendants contends that he did not actually search the residence, but only entered to seize the bat. (ECF No. 92 at 4 (citing TT2 at 270:20–271:6).) He thus argues that his entry must be deemed reasonable. Defendant's justification ignores that the law treats a warrantless search as presumptively unreasonable. Therefore, he must produce more than a mere assertion that his search was reasonable. He must provide an exception legally justifying the search as reasonable. *See Bonivert v. City of Clarkston*, 883 F.3d 865, 874 (9th Cir. 2018) ("[T]here is no talismanic distinction, for Fourth Amendment purposes between a warrantless 'entry' and a warrantless 'search.'"). The Court thus rejects his assertion.

Next, Defendant relies on *Michigan v. Tyler*, 436 U.S. 499 (1978), for his "continuing investigation" argument. (ECF No. 92 at 4–5.) In *Tyler*, firefighters initially entered a building under an exigency exception to put out a fire. The firefighter's investigation of the cause of the blaze was hindered by darkness, steam and smoke. Because of these conditions, the firefighters left the building after extinguishing the fire and returned several hours later to continue their investigation. The Supreme Court explained that "on the facts of this case," a further warrant was not necessary to justify the firefighters' investigative conduct when they returned to the building. The Court reasoned that little purpose would be served by requiring the firefighters to remain until the smoke cleared just to preserve their right to investigate. Thus, the Court found the return several hours later was justified as an actual continuation of the first entry and was still justified by exigency. *Id.* at 510 ("Prompt determination of the fire's origin may be necessary to prevent its recurrence, as through the detection of continuing dangers such as faulty wiring or a defective furnace. Immediate investigation may also be necessary to preserve evidence from intentional or accidentally destruction.").

The Ninth Circuit has applied and extended *Tyler*'s "continuing investigation" justification. For example, in *United States v. Echegoyen*, 799 F.2d 1271 (9th Cir. 1986), the Ninth Circuit applied the "continuing investigation" justification to a search by narcotics officers. In *Echegoyen*, police initially entered a house without a warrant because they smelled a chemical odor that created a serious fire hazard. Entering the residence, the police turned off gas burners, opened windows for ventilation and inspected the residence for open flames. During the inspection, the police found drug processing equipment, so they left the residence and called in narcotics agents. The agents entered the home, observed the drug processing equipment and then left to obtain a search warrant. Relying on *Tyler*, the Court found "the subsequent entry by the narcotics officers was based on the need to use their expertise in inspecting the premises for a possible fire hazard. Consequently, this second entry was merely a continuation of the initial lawful entry because both were done to alleviate the exigent circumstances." *Id.* at 1278. The Ninth Circuit extended *Tyler* to searches involving an armed standoff in *Fisher v. City of San Jose*, 558 F.3d 1069 (9th Cir. 2009). The Court explained that "the entirety of the [armed] standoff was done to alleviate the exigent circumstances that precipitated it" and "[m]oreover, the exigent circumstances that precipitated the initial seizure did not materially change from the beginning of the standoff to the end." *Id.* at 1077 (quotations omitted).

None of these cases is applicable to this case. To the extent Deputy Maleno initially entered the residence because of exigent circumstances concerning Plaintiff's fall to the floor in her home after Thornton entered, that exigency had long since dissipated when he returned to seize the bat. By that point, Godinez—the sole resident of her home—had already been arrested and booked into police custody. There is simply no evidence that a warrantless seizure of the bat was part of a continuing investigation to alleviate exigent circumstances. The Court, therefore, finds that *Tyler* is inapplicable to the facts of this case.

Finally, Defendant argues he has produced evidence that the search was reasonable because it was justified by exigency. (ECF No. 92 at 6.) However, it is undisputed that Godinez was in custody at the time he entered her home to seize the bat. Deputy Maleno has put forward no facts which show why the residence could not have been secured and a warrant obtained. *See Reid*, 226 F.3d at 1028 (rejecting exigency argument where there was no reason officers could not have simply staked out the apartment while waiting for a warrant.).

Based on the foregoing, the Court concludes that there is no legally sufficient evidentiary basis from which a jury could find that Deputy Maleno's warrantless entry to retrieve the bat was justified. His entry was presumptively unreasonable. Even putting the burden of nonpersuasion squarely on the Plaintiff, there is simply no evidence from which a jury could find the entry was reasonable. *See LaLonde v. Cty. of Riverside*, 204 F.3d 947, 954 (9th Cir. 2000) ("[A]bsent exigent circumstances, probable cause alone cannot justify an officer's warrantless entry into a person's home."). Accordingly, the Court grants Plaintiff's motion for judgment as a matter of law and directs entry of judgment in favor of Plaintiff and against Defendant on Count Two. The issue of damages remains an issue for the jury to decide.

### III. MOTION FOR RECONSIDERATION

Plaintiff also seeks reconsideration of the Court's summary judgment determination that Deputy Maleno was entitled to qualified immunity on Count 1, which alleges that Defendant violated her Fourth Amendment rights when he initially entered her home without a warrant. (Compl. ¶¶ 37–40; ECF No. 39 at 12–14.)

A motion for reconsideration is "appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). In order to succeed on a motion to reconsider, a party must set forth facts or law of a strongly convincing

nature to induce the court to reverse its prior decision. *See Kern-Tulare Water Dist. v. City of Bakersfield*, 634 F. Supp. 656, 665 (E.D. Cal. 1986), *aff'd in part and rev'd in part on other grounds*, 828 F.2d 514 (9th Cir. 1987). A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court has already ruled. *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005).

Plaintiff bases her motion for reconsideration on the facts adduced at trial. She argues that the trial evidence established that: (1) Thornton did not live at the residence; (2) twelve hours earlier Thornton had told a dispatcher that this was not his residence; (3) Deputy Maleno testified that it was his usual practice to review these dispatch records before responding to a call; (4) a brief records check would have established that Thornton was a sex offender living at a different address; (5) Thornton did not have keys to the residence, and Godinez apparently did not want him to enter; and (6) Plaintiff's expert testified that Deputy Maleno's behavior in this case was unreasonable. (ECF No. 82 at 8–14.) Plaintiff contends that these facts warrant reconsideration of the Court's prior determination.

The Court finds the alleged illegal entry raises two separate issues on which Plaintiff must make a showing as to both to warrant a favorable decision on her request for reconsideration. The first issue is whether a reasonable jury could find that Thorton's apparent authority to consent to the entry justified Deputy Maleno's entry into the sunroom. The second is whether a reasonable jury could find that the emergency nature of the situation did not justify Deputy Maleno's entry into the sunroom. Although Defendant has the burden to produce evidence supporting these theories, Plaintiff ultimately has the burden to prove that *neither* of these exceptions justified Deputy Maleno's entry.

### A. Apparent Authority

"Apparent authority" or whether an individual apparently has the authority to consent to entry is a mixed question of fact and law and requires a three–part analysis.

*United States v. Reid*, 226 F.3d 1020, 1026 (9th Cir. 2000). The Court first asks whether the officer believed some untrue fact that was then used to establish consent. Second, the Court asks whether, under the circumstances, it was objectively reasonable for the officer to believe the fact was true. Finally, the Court asks, assuming the truth of the believed but untrue fact, whether the individual giving consent would have had authority to consent to the entry. *Id.* (quoting *United States v. Fiorillo*, 186 F.3d 1136, 1144 (9th Cir. 1999)). Plaintiff raises sufficient questions of fact on the first two issues: whether Deputy Maleno actually believed that Thornton had authority to consent and whether Deputy Maleno's belief was objectively reasonable, to warrant putting these questions before a jury. Even so, Plaintiff cannot show that the emergency aid exception does not apply.

### B. Emergency Aid Exception

Deputy Maleno argues that he was simply following Thornton into the sunroom to keep the peace. Exigent circumstances to enter without a warrant exist when the officer is entering "to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Kentucky v. King*, 563 U.S. 452, 560 (2011); *see also Bonivert v. City of Clarkston*, 883 F.3d at 876 ("The emergency aid exception permits law enforcement officers to 'enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.'" (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). An entry is reasonable, regardless of the deputy's state of mind, if circumstances objectively justify the action. *Id.* This "emergency aid" exception recognizes a police officers' "community caretaking function" and allows them to respond to emergency situations when not acting in their function as a criminal investigator. *See Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009). To rely on this exception, "'law enforcement must have an *objectively reasonable basis* for concluding that there is an immediate need to protect others or themselves from serious harm.'" *Id.* at 763–64 (quoting *United States v. Snipe*, 515 F.3d 947, 951–2 (9th Cir. 2008))

(emphasis in original).

It is undisputed that Thornton, not Deputy Maleno, was the one who first entered the unlocked sunroom and was the one who forced down the back door. It is also undisputed that Deputy Maleno was told that Godinez had a gun and a baseball bat. At the time he followed Thornton into the sunroom, Deputy Maleno was not acting as a criminal investigator but in his peace-keeping role.

Plaintiff's request for reconsideration focuses less on Deputy Maleno's entry and more on whether Deputy Maleno should have persuaded or dissuaded Thornton from forcibly entering the home. (ECF No. 82 at 10–14.) Arguments that Deputy Maleno engaged in less than stellar police tactics are certainly appropriate. Had he truly desired to keep the peace, it might have been more effective for Deputy Maleno to try to dissuade Thornton from forcing open the door, especially when Thornton might have encountered a gun or a baseball bat. This situation was exacerbated since Deputy Maleno did not confirm that Thornton had a right to enter the home as a resident. The standard in a Section 1983 action, however, is not whether the police officer demonstrated ideal police tactics, but whether the officer's conduct violated the Constitution.

At the time Thornton entered the sunroom followed by Deputy Maleno, Deputy Maleno had an objectively reasonable basis for believing that some sort of a violent confrontation could ensue if and when Thornton confronted Godinez. Thornton told Deputy Maleno that Godinez had a bat and a gun, and Thornton clearly intended to force entry. It is therefore undisputed that circumstances amounting to the emergency aid exception existed for Deputy Maleno to follow Thornton into the sunroom. No jury could find otherwise.

The real question is whether Plaintiff has shown that this exigency constitutes a "police-created" exigency for which Deputy Maleno would not be entitled to the emergency aid exception to the Fourth Amendment's warrant requirement. In *Kentucky v. King*, 563 U.S. 452 (2011), the Supreme Court addressed police-created

exigencies. The Court rejected a variety of tests that had been applied by lower courts to determine whether a police officer is responsible for creating an exigency on which the officer relies as a justification for not obtaining a warrant. The Court rejected a reasonable foreseeability test under which exigent circumstances cannot exist if the officer reasonably could have foreseen that his conduct would create the exigent circumstances. *Id*. at 464–65. The Court further rejected any standard based on whether the officer had used standard or good police tactics. *Id.* at 467. And the Court rejected any subjective test that looked at the good or bad faith of the entering officer. *Id*. at 464. Instead, the Court concluded "that the exigent circumstances rule applies when the police do not gain entry to premises by means of an actual or threatened violation of the Fourth Amendment." *Id.* at 469.

It might be suggested that a jury could find that Deputy Maleno allowed Thornton to force his way into Godinez's home, or even intimated that forced entry would be permissible, and thus created the exigency on which Deputy Maleno relies to justify his initial entry. Whether this suggestion is tenable turns on whether the evidence could show that Thornton merely acted as an agent of Deputy Maleno such that Deputy Maleno gained access by means of an actual or threatened Fourth Amendment violation. When viewed under the constraints of the law, the evidence does not support this suggestion.

"The Fourth Amendment generally does not protect against unreasonable intrusions by private individuals" unless the "private individuals . . . are acting as government instruments or agents." *United States v. Reed*, 15 F.3d 928, 931 (9th Cir. 1994) (citations omitted). The "mere presence of government agents and their observation of a private person's actions is not significant participation and does not turn a private search into a joint effort." *Id.* Key to this analysis is "'whether the party performing the search intended to assist law enforcement efforts or further his own ends.'" *Id.* (quoting *United States v. Miller*, 688 F.2d 653, 657 (9th Cir. 1982)). "The private searcher must have a legitimate motive *other than crime prevention*."

*Id.* (emphasis original).

In this case, there was no law enforcement purpose underlying the initial entry. Rather, the motivation for entering Godinez's home was entirely Thorton's, who wanted to enter to retrieve his property. There is no evidence that Thornton's entry had any crime prevention purpose and, consequently, there is no evidence to support the suggestion that Deputy Maleno gained access to Godinez's home by means of an actual or threated Fourth Amendment violation. He simply followed Thornton and failed to stop him from breaking in, while remaining present in the event that violence might ensue. Because Plaintiff cannot show that Deputy Maleno entered her home through a police-created exigency, the Court denies Plaintiff's motion for reconsideration of the Court's summary judgment decision on Count 1.

## IV. CONCLUSION & ORDER

For the foregoing reasons, the Court:

1. **GRANTS** Plaintiff's motion for judgment as a matter of law on Count 2 of the Complaint for the post-arrest warrantless search of Godinez's home, in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution. (ECF No. 82.) The Court **DIRECTS** the Clerk of the Court to enter judgment in Plaintiffs' favor on Count 2 and against Defendant Maleno.

2. **DENIES** Plaintiff's motion for reconsideration of the Court's decision on Count 1 in its summary judgment order. (ECF No. 82.)

3. Based on the foregoing grant of judgment as a matter of law on Count 2, the Court will consider at the motion *in limine* hearing whether bifurcation of liability and damages is appropriate.

**IT IS SO ORDERED.**

**DATED: August 24, 2018**

Hon. Cynthia Bashant
United States District Judge